UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

RASHEED AHMAD,                                      :              23-cv-2222 (LJL)

                      Plaintiff,         :              <u>MEMORANDUM AND</u>

           -v-                                   :              <u>ORDER</u>

                                          :

EXPERIAN INFORMATION SOLUTIONS, INC.,               :

                  Defendant.         :

------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint against it for failure to state a claim upon which relief can be granted.  Dkt. No. 14.  The motion is granted.

## BACKGROUND

        Defendant removed this case, brought by Rasheed Ahmad ("Plaintiff"), from state court pursuant to this Court's federal-question jurisdiction.  *See* Dkt. No. 1.  Plaintiff sets forth his allegations in an Amended Endorsed Complaint, Dkt. No. 1-5, an incomplete filing entitled "Letter re Exhibits," Dkt. No. 9, and his response to Defendant's motion to dismiss, Dkt. No. 20.  For purposes of the motion to dismiss, the Court accepts as true the well-pleaded allegations of Plaintiff's complaint, Dkt. No. 1-5 at 5–6, as supplemented by the other materials submitted in his "letter," Dkt. No. 9.  And, because Plaintiff is proceeding *pro se*, the Court construes Plaintiff's filings broadly and liberally so as to raise the strongest arguments they suggest.  *See,*

*e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

Plaintiff is an individual consumer residing in the Bronx, New York.  Dkt. No. 9 at 22–23.  He is a "consumer" as defined by N.Y. Gen. Bus. L. § 380-A(b) and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(b) and (c).  *Id.* at 22.  Defendant is a Georgia corporation duly authorized and qualified to do business in the State of New York.  *Id.*  It is also a consumer reporting agency ("CRA") [1] within the meaning of the FCRA.  Dkt. No. 20 ¶ 5.

Plaintiff alleges that he was denied credit by certain financial institutions and multiple accounts of his were re-aged as a result of inaccurate reporting by Defendant, causing him emotional distress.  Dkt. No. 9 at 1.  He includes in the materials he has filed with the Court in the "Letter re Exhibits" several letters he sent to Defendant complaining that Defendant had improperly included information about ten specific accounts in his credit report and that Defendant had failed to maintain reasonable procedures to assure accuracy in his published credit report and had failed to verify some information in his credit report.  *Id.* at 2, 4, 24.  Plaintiff demanded that Defendant produce "verifiable proof," in the form of the original signed contract with his signature on it for each of the challenged accounts, and that Defendant remove any accounts for which it did not have the original signed contract.  *Id.* at 24, 26.  He demanded that Defendant reinvestigate his report.  *Id.* at 26.  He also complained that Defendant had provided such non-public information to non-affiliated third parties, *id.* at 24, 26, and attaches letters from a number of financial institutions denying his applications for credit and citing

---

[1] Although the FCRA speaks of a "consumer reporting agency," courts often refer to such entities as "credit reporting agencies."  *See, e.g.*, *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

information in the credit reports furnished by Defendant, *id.* at 3, 6–7, 8, 13.  Plaintiff includes in the "Letter re Exhibit" materials a grievance he filed with the Consumer Financial Protection Bureau ("CFPB") that Defendant failed to fix his credit report and had sent copies of his credit report to third parties without his permission or consent and without a permissible purpose.  *Id.* at 14–18.  He also attaches notices of balances due from an account that he claims is not his.  *Id.* at 11–12.  Plaintiff alleges that Defendant failed to follow proper procedures in correcting his information and failed to correct false information about him.  Dkt. No. 20 at 2–3.

## PROCEDURAL HISTORY

This case was initiated by summons and endorsed complaint filed in the Civil Court of the City of New York, Bronx County, on November 14, 2022, and served on Defendant on November 17, 2022.  Dkt. No. 1 ¶ 2.  As served on Defendant, the endorsed complaint contained a caption but did not contain any allegations.  Dkt. No. 1-1.  The portion of the form complaint where he would identify the nature and substance of his cause of action was blank.  *Id.*  The endorsed complaint was dismissed by order on February 21, 2023.  Dkt. No. 1 ¶ 3; Dkt. No. 1-4.  The state court noted that the endorsed complaint had left completely blank the section regarding the nature and the substance of the cause of action Plaintiff intended to plead, and that the description of the action which Plaintiff had included in an application for a summons still did not contain any factual allegations.  Dkt. No. 1-4.  On March 1, 2023, the court issued an Amended Decision and Order vacating its prior order, explaining that the endorsed complaint was blank due to a clerical error, deeming the endorsed complaint to incorporate a related Application for a Summons, and giving Defendant 60 days thereafter to answer, move or otherwise respond to the Endorsed Complaint.  *Id.*; Dkt. No. 1-5.  The Application for a Summons to which the court referred is not in the record.

On March 15, 2023, Defendant removed the case to this Court, pursuant to 28 U.S.C. § 1446(b), invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  Dkt. No. 1 ¶¶ 6, 9.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

On April 12, 2023, Plaintiff filed his "Letter re Exhibits" before this Court.  Dkt. No. 9.[2] On May 5, 2023, Defendant filed this motion to dismiss the complaint for failure to state a claim for relief along with an accompanying memorandum of law in support of the motion.  Dkt. Nos. 14–15.  On June 15, 2023, Defendant filed a reply memorandum of law in support of the motion. Dkt. No. 17.  On June 23, 2023, the Court issued an order noting that that Plaintiff's time to submit opposition papers to Defendant's motion to dismiss had expired on June 2, 2023.  Dkt. No. 19.  The Court nevertheless extended Plaintiff's deadline to submit opposition papers to July 15, 2023.  *Id*.  On July 14, 2023, Plaintiff filed a "response" to the motion to dismiss in which he complained that Defendant had engaged in "unfair deceptive practices" and "exchange[d]" his identity and had failed to follow a reasonable procedure in correcting his credit information. Dkt. No. 20.  On July 28, 2023, Defendant filed a further reply memorandum of law in support of the motion to dismiss.  Dkt. No. 21.

## DISCUSSION

## I.      Pleading Standards Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient

---

[2] Plaintiff's Letter re Exhibits contains paragraphs 1 through 7 (in part) and then paragraphs 14 through 17 of a purported complaint.  Dkt. No. 9 at 20–23.  It is missing portions of paragraph 7 and the entirety of paragraphs 8 to 13.  In other words, it is missing the third page.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim.  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court is obligated to construe *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  However, the Court's liberal construction of *pro se* pleadings does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, . . . 'although a court must accept as true all of the allegations contained in the complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009))).  Nor does the Court's liberal construction relieve *pro se*

litigants of the obligation to otherwise comply with the pleading requirements set forth by the Federal Rules of Civil Procedure. *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).

## II.        The Fair Credit Reporting Act

Plaintiff purports to plead claims under the FCRA.  Dkt. No. 9; Dkt. No. 1-5 at 5–6. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  "The FCRA 'places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies.'" *Ritchie v. N. Leasing Sys., Inc.*, 2016 WL 1241531, at *8 (S.D.N.Y. Mar. 28, 2016) (quoting *O'Diah v. New York City*, 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002)).

In particular, the FCRA imposes a series of complementary obligations on CRAs to ensure the confidentiality, accuracy, relevance, and proper utilization of consumer credit information.[3]  *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014).  "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995); *see* 15 U.S.C. §§ 1681n, 1681o.  It permits a CRA to furnish a consumer report only for one of the enumerated purposes in 15 U.S.C. § 1681b, and it prohibits certain information from being included in a consumer report for any but a limited number of exempted purposes, 15 U.S.C. § 1681c.  The FCRA further contains provisions designed to

---

[3] The following paragraphs, which describe some of the more salient duties that the FCRA imposes on CRAs, are not intended to be exhaustive.

6

promote accuracy in credit reporting.  It imposes on a CRA the duty to "maintain reasonable procedures . . . to limit the furnishing of consumer reports" to the statutory permissible purposes, 15 U.S.C. § 1681e(a), and, in the preparation of a consumer report, to follow "reasonable procedures to assure maximum possible accuracy" of information in a consumer's credit report, 15 U.S.C.§ 1681e(b).

Other sections of the FCRA govern information disclosure to consumers.  The FCRA requires each CRA, upon request, to disclose to the consumer, "[a]ll information in the consumer's file at the time of the request" and "[t]he sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report" need not be disclosed.  15 U.S.C. § 1681g(a)(1), (2).  The statute also requires the CRA, upon request, to identify each person that procured a consumer report from the CRA.  15 U.S.C. § 1681g(a)(3).

And, the FCRA imposes reinvestigation obligations on CRAs.  With limited exceptions, "if the completeness or accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the [CRA]" of the incompleteness or inaccuracy, the FCRA requires a CRA to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" free of charge and to record the current status of the disputed information or to delete it if it is inaccurate or incomplete or cannot be verified.  15 U.S.C. § 1681i(a)(1)(A).  The CRA is required to review and consider all relevant information submitted by the consumer in connection with the dispute, 15 U.S.C. § 1681i(a)(4), and to provide the consumer written notice of the results of the reinvestigation no later than five business days after the completion of the reinvestigation, 15 U.S.C. § 1681i(a)(6).  In addition, the CRA must provide to the consumer, upon request, a description of the procedure it used to

determine the accuracy and completion of the information in the consumer report.  15 U.S.C. § 1681i(a)(6)(B), (a)(7).

The obligations on CRAs under the FCRA operate in tandem with the obligations of users of consumer reports and on furnishers of information to CRAs.  *See, e.g.*, *Braun v. Client Servs. Inc.*, 14 F. Supp. 2d 391, 395 (S.D.N.Y. 2014).  Under § 1681m, a report user who takes an adverse action against a consumer based on information contained in the consumer report must provide notice to the consumer that it has taken adverse action based on information provided in a consumer report with the name, address, and telephone number of the CRA and of the consumer's right to obtain (free of charge) a copy of the consumer report.  15 U.S.C. § 1681m.  A person furnishing information to a CRA may not do so if he or she "knows or has reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681s-2(a)(1)(A).  After receiving notice of a dispute as to the completeness or accuracy of information furnished to a CRA, the furnisher must conduct an investigation with respect to the disputed information, report its results to the CRA, and, if an item of information is inaccurate or cannot be verified, refrain from reporting such information.  15 U.S.C. § 1681s-2(b)(1); *see Galper*, 802 F.3d at 445 (describing duties of furnisher of information to a CRA).  By those means, a consumer denied credit on the basis of a consumer report she believes to be inaccurate or incomplete can request a reinvestigation by the CRA and in turn by the furnisher, and, if dissatisfied with the results of the reinvestigation, obtain information about how the reinvestigation was conducted.

A CRA faces liability for noncompliance with the FCRA that is either willful or merely negligent.  A CRA that *negligently* fails to comply with a requirement under the FCRA is liable to a consumer for actual damages sustained by the consumer as a result of that failure.  15 U.S.C. § 1681o.  A CRA that *willfully* fails to comply with a requirement of the FCRA is liable for

actual damages or statutory damages, plus punitive damages.  15 U.S.C. § 1681n.  Statutory

damages in that instance are limited to $1,000.  *Id.* § 1681n(a)(1)(A).  And under both the

negligence and willfulness provisions, the consumer may recover the costs of the action and

reasonable attorneys' fees.  *Id.* §§ 1681n(a)(3), 1681o(a)(2).

**III.**      **Plaintiff's Allegations Under the FCRA**

The materials submitted by Plaintiff can be generously and liberally construed to raise the

following claims under the FCRA: (1) Defendant failed to follow reasonable procedures to

assure the accuracy of the information in his consumer report, 15 U.S.C. § 1681e(b); (2)

Defendant failed to conduct a "reasonable reinvestigation" to determine whether the disputed

information was accurate, 15 U.S.C. § 1681i; (3) Defendant gathered information about Plaintiff

and reported it without his consent; and (4) Defendant has failed to disclose the information in

Plaintiff's file, including the sources of information, 15 U.S.C. § 1681g(a).  Plaintiff does not

properly allege any of these claims.[4]

**A.**      **Formal Pleading Deficiencies**

As a preliminary matter, it is not clear that Plaintiff has complied with the formal

requirements for filing a complaint.  The complaint that was filed in state court and that has been

removed to this Court is entirely blank with respect to its allegations.  Such a defect is apparently

---

[4] Plaintiff also references New York's Fair Credit Reporting Act ("NYFCRA").  Dkt. No. 9 at
23.  "Because the language of the NYFCRA and the FCRA is substantially similar, 'the two
statutes must be construed the same way.'"  *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264,
267 n.1 (2d Cir. 2023) (quoting *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999));
*see also Owoyemi v. Credit Corp Sols. Inc.*, 596 F. Supp. 3d 514, 519–20 (S.D.N.Y. 2022)
(dismissing NYFCRA claim because the FCRA expressly preempts the NYFCRA pursuant to 15
U.S.C. § 1681t(b)).  Accordingly, the Court's discussion of Plaintiff's claims under the FCRA
also applies to the extent he intends to assert claims under the NYFCRA.  Plaintiff's additional
state law claims are addressed further below.

the result of a clerical error in state court, Dkt. No. 1-4, but the error was not corrected in state

court.  Although Plaintiff has submitted a document entitled "Letter re: Exhibits," and that

document contains incomplete portions of a purported complaint mixed with other documents, it

is not clear that Plaintiff intends those pages to serve as his complaint and, in any case, they are

incomplete.  Dkt. No. 9.

Rule 10(a) of the Federal Rules of Civil Procedure requires that every pleading "contain a

caption . . . setting forth the title of the action" with "the name of the first party on each side with

an appropriate indication of other parties."  Fed. R. Civ. P. 10(a).  Federal Rule of Civil

Procedure Rule 10(b) requires a plaintiff to "plead by stating [his or her] claims or defenses in

numbered paragraphs."  Fed. R Civ. P. 10(b); *Wade Park Land Holdings, LLC v. Kalikow*, 2023

WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023).  Defendant is entitled to know the allegations

against it, and to have those allegations framed in separate paragraphs, "with sufficient clarity to

allow the defendant to frame a responsive pleading."  *Jackson v. Warning*, 2016 WL 7228866, at

*4 (D. Md. Dec. 13, 2016) (quoting *Suntrust Mortg., Inc. v. First Residential Mortg. Servs.

Corp.*, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012)).  Plaintiff thus will have to file a new

complaint, with a proper caption, identifying the claims he intends to bring and the factual

allegations in support of those claims.

## B.  Merits

To the extent that facts can be gleaned from the material stated by Plaintiff, they fail to

state a claim for relief.

### 1.    Reasonable Procedures to Assure Maximum Accuracy

Although Plaintiff does not cite to the relevant part of the FCRA that he alleges Defendant violated, it appears, from the face of the complaint, that he attempted to assert a violation of § 1681e.  *See* Dkt. No. 9 at 22 ("Defendant negligently and/or willfully failed to follow reasonable procedures to assure maximum accuracy.").  Section 1681e creates liability if a CRA fails "to follow reasonable procedures to assure maximum possible accuracy."  15 U.S.C. § 1681e(b).  To state a negligence claim against a CRA under § 1681e(b) for inaccurate reporting, a plaintiff must allege: (1) the CRA reported inaccurate information about the plaintiff; (2) the CRA was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (3) the plaintiff was injured; and (4) the CRA's negligence caused the plaintiff's injury.  *Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, at *8 (S.D.N.Y. June 22, 2016).  To state a willfulness claim against a CRA under § 1681e, a plaintiff must allege: "(1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless." *Id.*  The final element (requiring an allegation of "knowing or reckless" violation by a CRA) requires a plaintiff to allege facts "related to" a CRA's "state of mind" when the CRA violated the FCRA.  *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 167 (S.D.N.Y. 2014).  A plaintiff need not plead actual damages or causation to make out a willfulness claim. *Feliciano v. CoreLogic Rental Prop. Sols., LLC*, 332 F.R.D. 98, 105 (S.D.N.Y. 2019).

Plaintiff does not state either a negligence claim or a willfulness claim under § 1681e(b). Exactly what Plaintiff is alleging with respect to how his accounts are inaccurate is unclear.[5]  But assuming Plaintiff sufficiently alleges that the accounts are inaccurate, Plaintiff fails to allege how the procedures used by Defendant were unreasonable.  A CRA "is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report."  *Ogbon v. Beneficial Credit Servs., Inc.*, 2013 WL 1430467, at *6 (S.D.N.Y. Apr. 8, 2013) (quoting *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)).  "[L]iability does not attach unless the [CRA] failed to follow reasonable procedures in generating the inaccurate report."  *Feliciano*, 332 F.R.D. at 105 (internal quotation marks omitted).  But Plaintiff does not allege how Defendant failed to follow reasonable procedures to ensure accuracy.  In fact, Plaintiff "states nothing at all about [Defendant's] procedures."  *Johnson v. Target Corp.*, 2019 WL 1227784, at *1 (E.D.N.Y. Feb. 12, 2019), *report and recommendation adopted sub nom. Johnson v. Target Corps.*, 2019 WL 1253467 (E.D.N.Y. Mar. 13, 2019).  Because Plaintiff

---

[5] To sufficiently allege the first element of either a negligence claim or a willfulness claim—inaccuracy—a plaintiff must both (1) identify the specific information on his credit report that is inaccurate; and (2) explain why the identified information is inaccurate.  *Swainson v. Lendingclub Corp.*, 2022 WL 2704629, at *8 (S.D.N.Y. June 24, 2022).  Plaintiff, by identifying in his filings various account names and numbers, does identify the specific information on his credit report that is inaccurate.  But exactly what he alleges with respect to *how* the information is inaccurate is unclear.  He claims alternatively that some accounts did not belong to him and that some accounts did belong to him but contained inaccurate information.  If Plaintiff chooses to replead he must allege "*why* such information is inaccurate."  *Phipps v. Experian*, 2020 WL 3268488, at *3 (S.D.N.Y. June 15, 2020) (emphasis added); *see also Gestetner v. Equifax Info. Servs. LLC*, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019) (dismissing complaint alleging that credit report was inaccurate without "any explanation as to why" information was false); *Varlack v. Transunion*, 2023 WL 6608980, at *2 (S.D.N.Y. Oct. 10, 2023).  Allegations that "a number of tradelines were . . . 'inaccurate and/or incomplete' . . . [without] specifics regarding the alleged errors" are insufficient to satisfy this threshold inquiry.  *DeSmarattes v. Equifax*, 2023 WL 8473362, at *8 (E.D.N.Y. Dec. 7, 2023).

nowhere alleges how Defendant failed to follow reasonable procedures when it generated the consumer report at issue, dismissal is proper.  *See, e.g.*, *Abdallah v. LexisNexis Risk Sols. FL Inc.*, 2021 WL 6197060, at *7 (E.D.N.Y. Dec. 30, 2021) (collecting cases); *see also Frederick v. Capital One Bank (USA), N.A.*, 2015 WL 5521769, at *7 (S.D.N.Y. Sept. 17, 2015) (dismissing claim where "Plaintiff merely recites the elements of the statute, alleging in a conclusory fashion that the Defendants failed to 'follow reasonable procedures'" with alleging supporting facts).

### 2.      Reasonable Reinvestigation

Plaintiff also may have attempted to raise a § 1681i claim of failure to sufficiently reinvestigate.  "Section 1681i requires that if a consumer notifies a CRA of a dispute as to the accuracy of any item of information contained in his file, within 30 days of notification, the CRA 'shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.'"  *Perez*, 2021 WL 4784280, at *9 (quoting 15 U.S.C. § 1681i(a)(1)(A)).

To state a negligence claim against a CRA for failure to reasonably reinvestigate a plaintiff must show that (1) the CRA reported inaccurate information; (2) the plaintiff disputed the inaccurate information and the dispute was not frivolous or irrelevant; and (3) the CRA failed to conduct a reasonable reinvestigation into the inaccurate information which (4) caused tangible or intangible damage.  *Choudhury v. Citibank, N.A.*, 2018 WL 11447942, at *3 (E.D.N.Y. Dec. 7, 2018); *see Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 92 (2d Cir. 2021).  To establish that such a violation was willful, not just negligent, a plaintiff must additionally allege that the CRA's interpretation of its reinvestigation procedures was "objectively unreasonable." *Choudhury*, 2018 WL 11447942, at *3; *see also Suluki v. Credit One Bank, NA*, 2023 WL 2712441, at *8 (S.D.N.Y. Mar. 30, 2023) ("The mere failure to correct a plaintiff's inaccurate

credit information, even after notification of the inaccuracy, does not constitute a willful failure to comply with the FCRA (alterations omitted)).

Plaintiff fails to make allegations supporting the third element—that the CRA failed to conduct reasonable reinvestigation into the disputed information.  The reasonableness of the investigation "depend[s] on the circumstances of a particular dispute."  *Jones v. Experian Info. Sols.*, 982 F. Supp. 2d 268, 273 (S.D.N.Y. 2013).  But without any allegations as to what Defendant *did* in the course of reinvestigating, the Court cannot assess the reasonableness of Defendant's reinvestigation procedure.  *See, e.g.*, *Nguyen v. Ridgewood Sav. Bank*, 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015) (dismissing FCRA claim where the plaintiff "fail[ed] to make any allegations regarding either the procedures followed or investigations by" the CRAs "in response to [the plaintiff's] complaints"); *Viverette v. Experian*, 2022 WL 357274, at *3 (S.D.N.Y. Feb. 7, 2022) (dismissing FCRA claim where the plaintiff failed "to allege any facts showing that [the defendant CRA] failed to follow reasonable reinvestigation procedures").  The CFPB's response to Plaintiff's grievance indicated that Defendant *did* reinvestigate.  *See* Dkt. No. 9 at 18.  But Plaintiff does not tell us what he heard back regarding the reinvestigation, if anything.  Absent *any* allegations as to what Defendant did or did not do in the course of reinvestigating, Plaintiff fails to state a negligent, much less willful, violation of § 1681i.

### 3. Consumer Authorization

Third, to the extent that Plaintiff suggests that Defendant failed to obtain his consent before sharing his consumer report with others, he has not alleged that Defendant had any such obligation.  Section 1681b of the FCRA permits a CRA to furnish a consumer report for a number of permissible purposes including:

> To a person which it has reason to believe (A) intends to use the information in connection with a credit transaction involving the consumer on whom the

information is to be furnished and involving the extension of credit to, or review or collection of an account, of the consumer; or (B) intends to use the information for employment purposes; or . . . (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or (F) otherwise has a legitimate business need for the information (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(3).[6]  Liability for violation of § 1681b typically attaches to "third parties who willfully or negligently 'use or obtain' a consumer report for an impermissible purpose," not the CRAs themselves.  *Rajapakse v. Shaw*, 2022 WL 1051108, at *5 (S.D.N.Y. Feb. 18, 2022), *report and recommendation adopted by* 2022 WL 855870 (S.D.N.Y. Mar. 23, 2022); *see also Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 396 (S.D.N.Y. 2014).  However, a CRA itself may face liability under § 1681e(a) if the CRA either willfully or negligently failed to maintain reasonable procedures designed to avoid violations of § 1681b.  *Moore v. Experian*, 2023 WL 7169119, at *5 (S.D.N.Y. Oct. 13, 2023).  Here, Plaintiff does not allege anything that has to do with Defendant's procedures.  Accordingly, he cannot state a claim for violation of § 1681e(a).

And, more fundamentally, the FCRA does not always require consumer authorization before a credit report may be issued.  "Under the FCRA, there are circumstances pursuant to which a consumer's credit report may be obtained without the consent or even the knowledge of the consumer."  *Gamble v. Citifinancial & Landers*, 2002 WL 31643028, at *2 (D. Conn. Nov. 19, 2002); *cf. Boyd v. Experian*, 2023 WL 346004, at *4 (E.D. Mo. Jan. 20, 2023) ("[P]laintiff

---

[6] There are limited exceptions.  For example, the consumer must authorize the CRA to provide credit information for a consumer report for employment purposes, 15 U.S.C. § 1681b(b)(2), or a consumer report in connection with a credit or insurance transaction that is *not initiated by the consumer*, 15 U.S.C. § 1681b(c)(1)(A).

has not provided the Court with any citations to FCRA indicating that Experian needs her consent or permission to place valid financial information on her credit report.").

Plaintiff has not alleged the disclosure of his consumer report beyond those purposes permitted by law.  In fact, the letters Plaintiff received back from various financial institutions reflect that Plaintiff affirmatively initiated credit transactions that triggered disclosure of his credit report.  Dkt. No. 9 at 3, 6–7, 8, 13.  That is an instance in which the FCRA expressly does not require Plaintiff's affirmative consent.  15 U.S.C. § 1681b(a)(3)(A) (a CRA may furnish a consumer report to anyone which it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer").

### 4.    Disclosure

Finally, at various points in his submissions, Plaintiff appears to complain that Defendant has violated § 1681g(a), which requires CRAs, upon request, to disclose "[a]ll information in the consumer's file at the time of the request" (except for a consumer's full Social Security Number and credit risk scores), as well as "[t]he sources of the information" (except sources acquired and used solely to prepare an investigative consumer report).  15 U.S.C. § 1681g(a)(1), (2).  Plaintiff has not alleged facts to establish a violation of that provision.

A consumer's "file" refers to "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g); *see Cortez v. Trans Union, LLC*, 617 F.3d 688, 711 (3d Cir. 2010) (CRA may not avoid disclosure by simply contracting with a third party to store and maintain information subject to disclosure).  It includes "all information on the consumer that is recorded and retained

by a [CRA] that might be furnished, or has been furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711–12; *see also id.* at 711 n.27 (noting the information in a consumer's "file" may be broader than the information in the "consumer report"); *accord Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018).  However, a CRA is not obligated to disclose purely internal record-keeping items not found within a consumer report. *See, e.g.*, *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007) (CRA not obligated to furnish the date of delinquency of a credit account); *Shaw*, 891 F.3d at 759–60.

Plaintiff appears to complain that Defendant failed to provide him "verifiable proof (i.e., an original consumer contract with [his] signature on it) that [Defendant] ha[s] on file." Dkt. No. 9 at 24.  But Plaintiff does not allege facts to support that Defendant would have in his file a copy of the original consumer contract.  *See Frazier v. Experian Info. Sols., Inc.*, 2018 WL 3785131, at *4 (D. Md. Aug. 9, 2018).  What's more, the FCRA does not require CRAs to "keep copies of consumer contracts related to accounts appearing on their credit reports." *Pawlowski v. Experian Info. Sols., Inc.*, 2021 WL 2930076, at *3 (E.D. Va. July 12, 2021) (citing, *inter alia*, *Jackson v. Warning*, 2016 WL 7228866 (D. Md. Dec. 13, 2016)).  Thus, Plaintiff has not stated a claim under Section 1681g(a).

## IV.       State Law Claims

It appears that in his Application for a Summons, Plaintiff also makes two additional state-law claims for defamation and for deprivation of his right of privacy under New York Civil Rights Law § 50.  *See* Dkt. No. 1-5 at 6 (state court decision describing Application for Summons).  Although the "Letter re Exhibits" states only one state-law claim arising under the

New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law §§ 380 *et seq.*, Dkt. No. 9 at 23, the

Court does not understand that document to constitute an attempt to amend the complaint.[7]

In light of the deficiencies with Plaintiff's federal claims discussed above, the Court need

not separately analyze the state law claims.  The Court declines to exercise jurisdiction over his

state-law claims standing alone.  The Court has discretion whether to exercise supplemental

jurisdiction once it has dismissed all claims over which it has original jurisdiction.  28 U.S.C.

§ 1367(c)(3).  In considering whether to exercise jurisdiction, a district court should consider

"the values of judicial economy, convenience, fairness, and comity in order to decide whether to

exercise jurisdiction over a case brought in that court involving pendent state-law claims."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  In the usual case where, as here, all

federal-law claims are eliminated before trial, the balance of factors to be considered militate

against the exercise of jurisdiction over any remaining state-law claims.  *Id.* at 350 n.7; *Kolari v.

N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Motorola Credit Corp. v. Uzan*, 388

F.3d 39, 56 (2d Cir. 2004); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715,

726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to

promote justice between the parties, by procuring for them a surer-footed reading of applicable

---

[7] "When a case is removed to federal court, 'the federal court takes the case up where the State court left it off.'" *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974)).  The district court takes the removed case "in the posture in which it existed when it is removed from a state court's jurisdiction and must give effect to all actions and procedures accomplished in a state court prior to removal." *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 387 (S.D.N.Y. 2001) (quoting *Miller v. Steloff*, 686 F.Supp. 91, 93 (S.D.N.Y. 1988)); *see also Adler v. Adler*, 862 F. Supp. 70, 71 (S.D.N.Y. 1994) (pre-removal state court decisions should be followed unless there is a valid reason not to).  In this instance, the state court proceedings left off with the Amended Decision and Order dated March 1, 2023 deeming the Application for a Summons to constitute the timely served "Amended Endorsed Complaint."  Dkt. No. 1-5 at 4.  For the purposes of proceedings before this Court, the Amended Endorsed Complaint is therefore operative.

law.").  There is no reason to depart from that practice in this case.  Should Plaintiff choose to

file an amended complaint, he may include state-law claims in that pleading on the assumption

that he can plead such claims.

**V.        Dismissal Without Prejudice with Leave to Amend**

As noted, Plaintiff proceeds in this matter without the benefit of an attorney.  The Second

Circuit has instructed that district courts generally should grant a self-represented plaintiff an

opportunity to amend a complaint to cure its defects, unless amendment would be futile.  *Shomo*

*v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009); *see Hill v. Curcione*, 657 F.3d 116, 123–

24 (2d Cir. 2011).  Indeed, the Second Circuit has cautioned that district courts should not

dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading

of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed.*

*Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999) (alteration omitted) (quoting *Branum v. Clark*, 927

F.2d 698, 705 (2d Cir. 1991)); *see Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("[A] *pro se*

litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a

valid claim.").

Because Plaintiff may be able to allege additional facts to state valid claims, the Court

grants Plaintiff 60 days leave to amend his complaint.  Should Plaintiff opt to file an amended

complaint, he should caption it as such and organize it as required by Federal Rule of Civil

Procedure 10.  Plaintiff may, in the amended complaint, raise any federal and state claims that he

wishes—Plaintiff is not bound by the claims he raised in his previous filings.  The amended

complaint should include the facts Plaintiff believes to be relevant to his claims for relief, listed

in enumerated paragraphs.

Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant.  Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief.  That information should include:

a)  the names and titles of all relevant people;

b)  a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c)  a description of the injuries Plaintiff suffered; and

d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief under the applicable state and federal laws.  Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.  Plaintiff may attach relevant documents, including those in his "Letter re Exhibits" as exhibits to the amended complaint, Fed. R. Civ. P. 10(c), so long as the information they contain are integral to his claims: for example, if the documents are referenced in the complaint or if Plaintiff relied on them in bringing suit, *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383–84 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order).

**CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED without prejudice to the filing of an amended complaint.  Plaintiff has leave to file an amended complaint within 60 days of the date of this Order, on or before February 12, 2024.[8]

SO ORDERED.

Dated: December 14, 2023
    New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[8] Plaintiff may consider contacting the New York Legal Assistance Group's ("NYLAG") Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this court.  The clinic is run by a private organization; it is not part of, or run by, the Court.  It cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit.